## * HAINES v. THE REPUBLIC FIRE INS. CO.

Whether evidence of the value of property should be excluded on account of its remoteness in point of time or place, is a question of fact to be decided upon the circumstances of each case.

Ordinarily, in the cross-examination of a witness, he should not be asked to read his deposition or any part of it to the jury; it is generally unnecessary and improper to inquire of him in regard to it further than to give him an opportunity to make an explanation; and generally his attention should not be called to it until it has been regularly put in evidence at the proper time, which is not while he is on the stand.

ASSUMPSIT, by Alanson L. Haines against The Republic Fire Insurance Company of the City of New York, upon a policy of insurance dated October 20, 1870, insuring $1,500 upon a house, $1,500 upon two barns, and $300 upon hay. The buildings were situated upon a farm in Plymouth known as "the Thompson place," and were destroyed by fire November 11, 1870. The defendants contended that the policy was avoided by the plaintiff's fraudulent misrepresentation of the value of the property. The defendants introduced evidence tending to show that the plaintiff represented the cash value of the buildings to be $5,000. Much evidence was introduced on both sides as to the value of the land and the buildings. It appeared that the farm had been sold several times within three years before the fire, but, except in one instance, it had not been paid for in cash, but had been exchanged for other property, such as lands, notes secured by Western mortgages, and a patent right and patented machines. The value of the property thus exchanged for the farm was in controversy.

John Nutting was allowed, subject to exception, to testify what he paid in 1867 for the Thomas Nutting farm, with the buildings thereon,— the nearest bounds of said farm being less than a mile from the nearest bounds of the Thompson place, but the distance by the road being from a mile and a half to a mile and three quarters. He was also allowed, subject to exception, to state the price at which the Thomas Nutting farm was bid off at auction in 1870.

In 1869, one Capen had exchanged the Thompson place for certain lots of land in Wentworth, and a $3,000 note. Subject to exception, Reuben Hobbs was permitted to testify what he paid in 1869 for a tract of about 800 acres of wood land in Wentworth, in another section of the town, and several miles from the lots conveyed to Capen. The land and timber on this 800 acre tract were described as similar to the land and timber on the Capen lots. It appeared that Hobbs, some ten or fifteen years prior to the conveyance to Capen, had cut the spruce timber from the greater portion of the Capen lots; also, that he had

---

* Decided March (adjourned) term, 1873.                    REPORTER.

had considerable experience in dealing in woodland in Wentworth. Subject to exception, Hobbs was permitted to give his opinion upon the cash value of the stumpage of the hard wood upon the Capen lots.

Moses Pervear was at the time of the fire, and is now, the owner and occupant of a farm adjoining the Thompson place. Subject to exception, he was permitted to give his opinion as to the cash value of the Thompson place, including the buildings, at the time the fire occurred. The plaintiff objected that there was no proof of Pervear's competency to judge.

It appeared that Charles Mitchell is a farmer, residing about one mile from the Thompson place; that he formerly owned a piece of land which is now a part of the northerly portion of the Thompson farm; that he owns a pasture adjoining the Thompson farm on the east; that in going to this pasture he used to go over part of the Thompson farm, tying his horse at, or near, the buildings; that he had had occasion, within a year or two, when hunting for sheep, to go over that part of the Thompson farm on the same side of the road as the buildings, going up to the edge of the woods; also, that he had been into the house, and had some knowledge of the barn. Subject to exception, Mitchell was allowed to give his opinion as to the cash value of the Thompson place, including buildings, at the time of the fire.

The defendants called the plaintiff as a witness. While he was testifying, they proposed to ask him how he had testified on certain points in his deposition which the defendants had taken. The plaintiff's counsel contended " that the whole deposition should be read, and that the witness should not be badgered on the stand with the deposition." Subject to exception, it was ruled, that the defendants might show the deposition to the plaintiff, and ask him to read passages therefrom. A similar ruling, subject to the same exception, was subsequently made in the case of J. B. Rand, a witness called by the plaintiff, whose deposition had previously been taken by the defendants. The defendants were also permitted, subject to exception, to ask Rand what he meant by certain answers in his deposition, to which his attention was called.

Verdict for the defendants. Motion of the plaintiff for a new trial. Reserved.

*H. Bingham, Burrows,* and *Page & Albin,* for the plaintiff.

*Carpenter, George, Blair,* and *Putnam,* for the defendants.

By the Court. We think there was no error in admitting the testimony of Nutting as to what he paid for the Thomas Nutting farm in 1867, and the sale of it at auction in 1870. The objection is, that it was too remote as to locality, and the first sale as to time. We are of the opinion, however, that neither objection can be sustained as matter of law, but that it was competent for the judge who tried the cause, in his discretion, to admit the evidence; nor do we understand that the question of discretion was reserved. If such had been intended, we

should have expected an explicit statement to that effect, or else such a description of the circumstances affecting the exercise of discretion as to show that the whole was intended to be reserved; and such a description we do not find.

In respect to the matter of distance from the property in question, we think there can be no doubt. As to real estate in cities or villages, the value of such property at a distance of one or two miles might furnish little or no aid to a jury, while in respect to farms, farming land, and wood land, sales at a much greater distance, in the rural or sparsely inhabited parts of our State, would afford valuable, and, in some instances, the only aid that could be had in such investigations.

In respect to remoteness of time, it appears that the insurance was October 20, 1870, and the loss, November 11; 1870. The sale of the Nutting farm was in 1867, but as the time of the year is not stated, it may have been several months more, or a month or two less, than three years before the insurance.

In *Thornton* v. *Campton*, 18 N. H. 20, a sale of the real estate in question, in the spring of 1816, was held to be admissible as bearing on the value of the same estate during the four years ending in the spring of 1814 ; and the court, by GILCHRIST, J., say that the causes which produce changes in the value of land and in the value of money are, commonly, so gradual in their operation, that very safe inferences may be formed from the present value of a particular estate, as to what it was two, four, or six years ago, by persons conversant with the business of the neighborhood.

This would be especially true of the cultivated farms in our State, and we think it would clearly be within the discretion of the court to receive the testimony offered in this case.

Whether the evidence offered is too remote in point of time must necessarily be left very much to the discretion of the judge who tries the cause, and ordinarily that discretion will not be revised unless it be clearly reserved for that purpose.

That the question of remoteness in respect to time is left to the discretion of the judge who tries the cause, is too well settled in this State to need the citation of authorities, and it is not questioned by counsel.

The testimony of Reuben Hobbs, as to the price paid for other wood land in Wentworth, was, we think, admissible, in the discretion of the judge, although several miles from the lots conveyed to Capen. It is quite obvious that there might be such similarity, in respect to character and location in relation to a market, as to furnish great aid in fixing the value of the Capen lots.

As to his opinion of the value of stumpage on the Capen lots, it was for the court to judge whether he was qualified to give an opinion. It is made competent by statute, and we cannot revise the decision of the judge on the qualification of the witness.

In regard to the testimony of Pervear and Mitchell, the same remarks that were made in respect to the opinion of Hobbs apply,—

namely, that the qualifications of the witnesses to give opinions as to value are to be determined by the judge who tries the cause.

The course allowed to be taken in the cross-examination of witnesses on the stand, in reference to their depositions, was not in accordance with our approved and settled practice. Witnesses should not ordinarily be asked to read to the jury passages in their depositions. Such a proceeding is generally useless, and calculated to annoy the witness. There might be a case where it would be proper, after the deposition had been read to the jury by counsel, to recall the witness, and give him an opportunity to explain the whole or some part of it. There might be a case where it would be proper to ask him what he meant by certain answers in the deposition; but generally it would be unnecessary, and therefore improper, to put the question in that form. All that would generally be necessary or proper would be to give him an opportunity to explain anything in his deposition that might seem to be inconsistent with his oral testimony on the stand. And the offer of such an opportunity should, of course, be made in mild and brief terms, and in a civil manner. The plaintiff's counsel contended, at the trial, " that the witness should not be badgered on the stand with the deposition;" and that claim is sustained to the full extent of the appropriate and significant language in which it was presented.

At the first trial of *Kendall* v. *Brownson* (in Grafton, September term, 1863), " on the cross-examination of the defendant, his deposition, previously taken by the plaintiff, was shown to him, and the court permitted the plaintiff, against the objection of the defendant, to ask him the question, ' Is that your deposition, and did you swear to it?' Also, while the witness still held the deposition in his hand, the court permitted the other question to be put, ' Did you state, in that deposition, that you received anything out of the Rutherford notes?'" On a case reserved, it was held that a question, asked only to identify the deposition or the deponent, or to prove the signature if it was denied, for the purpose of using the writing as an admission of the party, and not as a deposition of a witness, might be proper; but that it would seem that the question, " Is that your deposition, and did you swear to it?" was asked for the purpose of intimidating the witness, rather than for the purpose of obtaining information; that it would seem also that the question, " Did you state, in that deposition, that you received anything out of the Rutherford notes? " should not have been asked; that if it called for parol evidence of the contents of the deposition, it would be inadmissible, and if it was asked to embarrass the witness, and produce an effect upon the jury which should have been postponed till the argument, it was equally improper; that it was a matter of discretion, and that ordinarily it would be proper not to allow such questions as were put to the defendant at the trial. The verdict was set aside on another point.

At the second trial of that case (March term, 1866), " on his [the defendant's] cross-examination, the plaintiff's counsel produced a deposition admitted to be a deposition given by the defendant in this case,

taken at the plaintiffs' request, and proposed to read, or that the defendant on the stand should read, portions of it to the jury. The court ruled, as a matter of discretion, that this should not be done until the evidence on the part of the defence had been introduced; and the plaintiff excepted. The plaintiff then proposed to put the deposition into the defendant's hands, and to cross-examine him upon it. The court ruled that the contents of the deposition should not in any way be made known to the jury during the cross-examination of the defendant, for the purpose of impeaching or contradicting him, or showing any inconsistency between the deposition and his testimony on the stand, or asking him to explain anything in the deposition, but that, when the plaintiff put in his rebutting evidence, he might read the deposition to the jury, and recall the defendant to explain any apparent inconsistency, or to explain anything in the deposition that requires explanation,—to which ruling the plaintiff excepted. After the defendant rested his case, the plaintiff's counsel read to the jury such portions of the deposition as they chose, and the defendant was subsequently recalled as a witness by his own counsel, and was cross-examined by the plaintiff." On a case reserved, it was held (PERLEY, C. J., delivering the opinion) that the order in which evidence shall be given, and the right of examination exercised, is in our practice very much in the discretion of the court; that the habit of cross-examining witnesses as to their former testimony in the same cause is one liable to abuse; that if there was any contradiction, in that case, between the deposition and the testimony of the witness on the stand, the plaintiff had sufficient opportunity to show it; and the course taken at the trial was approved as the correct practice. The decision of this question was not reported (47 N. H. 186), because it was not regarded as establishing any new or settling any doubtful point.

There can hardly be any occcasion to identify a deposition, or to prove the signature of it, by the deponent on the stand, or to ask him any question in regard to it, until he is recalled after it has been regularly put in evidence at the proper time, which is not during his examination or cross-examination. Such matters as the identity of the paper and of the witness, and the genuineness of the signature, are not usually in dispute, and it would be well not to anticipate any controversy on those points, but to wait and see what objections will be made to the introduction of the deposition when it is offered at the proper time. The subject is one on which no absolute rule can be laid down, because it is a matter of fact and of reasonableness *(Darling* v. *Westmoreland,* 52 N. H. 408). In this case, there is no error in law for which a new trial should be granted.

*Judgment on the verdict.*